## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICANS FOR PUBLIC TRUST<br>107 S. West Street, Suite 442<br>Alexandria, VA 22314,<br><br>       Plaintiff,<br><br>   v.<br><br>FEDERAL ELECTION COMMISSION<br>1050 First Street, NE<br>Washington, DC 20463,<br><br>      Defendant. | Civil Action No. _____ |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      This is an action under the Federal Election Campaign Act ("FECA" or the "Act"), 52 U.S.C. § 30109(a)(8)(A), for unlawful agency delay.

2.      Plaintiff, Americans for Public Trust (hereinafter "Plaintiff" or "APT"), seeks injunctive and declaratory relief to compel Defendant Federal Election Commission ("FEC") to act on Plaintiff's Administrative Complaint alleging violations of FECA and corresponding FEC regulations prohibiting contributions from foreign nationals and conduit contributions, and governing political committee registration and reporting requirements.

3.      Plaintiff filed an administrative complaint with the FEC on May 14, 2021, alleging that Hansjörg Wyss, the Wyss Foundation, the Berger Action Fund, the New Venture Fund (including its trademark "The Hub Project"), and the Sixteen Thirty Fund (together, the "Administrative Respondents") violated various FECA provisions by: (i) making and accepting prohibited contributions from foreign nationals; (ii) unlawfully concealing the identity of

contributors, and making contributions in the name of another, through the use of conduits; and (iii) failing to register and file required disclosures with the FEC. Ex. 1, Administrative Compl., ¶¶ 4-7. The FEC acknowledged receipt of Plaintiff's Administrative Complaint by letter dated May 18, 2021, and informed Plaintiff that the FEC had "numbered this matter MUR 7904." Ex. 2.

4.      Plaintiff's Administrative Complaint asked the FEC to find that the Administrative Respondents violated (1) 52 U.S.C. § 30121 by making and accepting contributions from a foreign national, Mr. Wyss, for the purpose of influencing federal elections; (2) 52 U.S.C. § 30122 by allowing Mr. Wyss to make unlawful contributions through a network of nonprofit organizations, thereby concealing their source; (3) 52 U.S.C. § 30103(a) by failing to register with the FEC as political committees after accepting more than $1,000 in contributions for the purpose of influencing federal elections; and (4) 52 U.S.C. § 30104 by failing to report contributions and expenditures made for the purpose of influencing federal elections. Ex. 1, ¶¶ 4-7.

5.      The Act provides administrative complainants with a cause of action against the FEC if the agency fails to act on an administrative complaint within 120 days. 52 U.S.C. § 30109(a)(8)(A).

6.      Plaintiff's administrative complaint was filed on May 14, 2021, 346 days before the filing of the instant Complaint. Hence, more than 120 days have passed since Plaintiff filed its administrative complaint and the FEC has not yet taken action with regard to that complaint.

7.      Plaintiff has suffered an injury-in-fact by being deprived of full disclosure of the contributions made and political activities undertaken by the Administrative Respondents, as well as other information regarding the nature of the ongoing relationships between the Administrative Respondents. Plaintiff lacks information, for instance, about: (i) whether Mr. Wyss, a foreign

national, has made political contributions in violation of federal law; (ii) whether Mr. Wyss has funneled contributions through the Administrative Respondent nonprofits to conceal their source; (iii) whether Administrative Respondents should have registered with the FEC as political committees and reported their political activity; and (iv) the exact amount of unreported contributions received and unreported expenditures made by Administrative Respondents. This is reportable information to which Plaintiff is legally entitled under FECA and which the FEC should determine must be disclosed.

8.      Plaintiff therefore requests that this Court declare the FEC's failure to act upon Plaintiff's Administrative Complaint contrary to law and order the FEC to conform within 30 days.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A).  This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10.      Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

11.      Plaintiff has Article III standing to bring this suit as it has suffered an injury-in-fact in the form of deprivation of information that is required to be disclosed under FECA.  *See FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.").

## THE PARTIES

12.      APT is a nonpartisan, nonprofit organization that serves as a watchdog promoting open and transparent government by monitoring the activities of policymakers and actors within the political arena. APT seeks to shine light on the workings of the federal government and to

promote accountability of elected, appointed, and employed government officials as well as candidates for public office.

13.    As part of its transparency efforts, APT uses campaign finance disclosure reports that are required to be publicly filed with the FEC to educate the public about campaign spending and the true sources and scope of candidates' financial support, thereby enabling the public to fully evaluate candidates for public office. APT relies on the accurate and complete reporting of campaign finance information to carry out this activity which is central to its organizational mission.

14.    Further, Americans for Public Trust files administrative complaints with the FEC requesting that enforcement actions be taken against individuals and organizations that violate federal campaign finance law. Americans for Public Trust uses its analysis of publicly reported federal campaign finance information to support its activities before the FEC.

15.    When public disclosure reports that are required to be filed with the FEC are incomplete, inadequate, or inaccurate (or, worse, never filed), it obstructs APT's ability to carry out these activities in furtherance of its organizational mission. When APT is forced to file an administrative complaint to rectify such a situation, the organization is required to divert organizational resources and funds from other important operations.

16.    Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## STATEMENT OF LAW

17.    FECA defines the term "contribution" to include "any gift, subscription, loan, advance, or deposit of money or *anything of value* made by any person for the purpose of

influencing any election for Federal office[.]" 52 U.S.C. § 30101(8)(A)(i) (emphasis added); 11 C.F.R. § 100.52.

18.     "Anything of value" includes "the provision of any goods or services without charge or at a charge that is less than the usual and normal charge for such goods or services[.]" 11 C.F.R. § 100.52(d)(1).

19.     In-kind contributions are subject to the same source prohibitions and amount limitations as ordinary contributions.  52 U.S.C. § 30116(a)(1)(A).

20.     Corporations, including nonprofit corporations, are also prohibited from making contributions to federal candidates, federal political committees, and federal party committees.  52 U.S.C. § 30118(a).

21.     FECA defines the term "political committee" to include "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year," including in-kind contributions. 52 U.S.C. § 30101(4)(A).

22.     Within ten (10) days of a political committee receiving or expending more than $1,000 in a calendar year to influence federal elections, it is required to file a statement of organization with the FEC and designate a treasurer. 52 U.S.C. § 30103(a)-(b).

23.     Political committees are required to file public disclosure reports with the FEC which include details regarding all disbursements made and all contributions received, including in-kind contributions.  52 U.S.C. § 30104(b); 11 C.F.R. Part 104.

## ARGUMENT

24.     According to publicly available information, Administrative Respondent Hansjörg Wyss is not an American citizen or a lawful permanent resident of the United States. In one media

report, Mr. Wyss claimed that he "carried only a Swiss passport and did not have a U.S. green card." Ex. 1, ¶¶ 12-13. A letter prepared by Mr. Wyss's attorney confirmed that he was present in the United States on an E-2 visa and was therefore not a legal permanent resident. *Id.*

25.    Despite his apparent status as a foreign national holding a Swiss passport, Mr. Wyss directly contributed nearly $70,000 to federal candidates and political action committees between 1990 and 2003. *Id.* ¶ 23. He has contributed even greater sums in recent years to the Administrative Respondent nonprofits, which then used some of these contributions to fund electoral advocacy by state-based groups with innocuous names. *Id.* ¶¶ 18-20. This spending has been routed through an entity called "The Hub Project" and has not been subject to full public disclosure due to the failure of the Administrative Respondents to register with the FEC and report as political committees. *Id.* ¶ 28.

26.    The facts are straightforward: Mr. Wyss contributes tens of millions of dollars to two nonprofit organizations that he established, the Wyss Foundation and the Berger Action Fund, Inc. *Id.* ¶ 12. Those entities then transfer the funds contributed by Mr. Wyss to two other nonprofit organizations that are not outwardly affiliated with Mr. Wyss, the New Venture Fund and the Sixteen Thirty Fund. *Id.* ¶¶ 18-19. Finally, New Venture Fund and Sixteen Thirty Fund use these contributions to fund the political advocacy of "The Hub Project," which is not a stand-alone entity but a trademark registered to the New Venture Fund that operates its own Super PAC, Change Now. *Id.* ¶¶ 18-21. By operating through this network of nonprofits, Mr. Wyss is able to conceal his prohibited contributions. By conducting their political spending under a different (trademarked) name, the New Venture Fund and Sixteen Thirty Fund are able to conceal the true extent of their political activity and avoid registering as political committees with the FEC, a step which would require the public disclosure of their donors.

27.     The Wyss Foundation is a 501(c)(3) nonprofit organization. *Id.* ¶ 12.

28.     The Berger Action Fund, Inc. is a 501(c)(4) nonprofit organization. *Id.*

29.     According to public filings, Administrative Respondents the Wyss Foundation and Berger Action Fund, Inc. share facilities and staff. *Id.*

30.     The Wyss Foundation, which Mr. Wyss established, started The Hub Project (a trademark now registered to Administrative Respondent New Venture Fund) in 2015. *Id.* ¶ 14.

31.     According to public reporting, the Wyss Foundation also contributed approximately $56.5 million to New Venture Fund between 2007 and 2020. *Id.* ¶ 18.

32.     The New Venture Fund is a 501(c)(3) nonprofit organization. *Id.* "The Hub Project" is not a separate organization, but a trademark registered to the New Venture Fund. *Id.*

33.     The Sixteen Thirty Fund is a 501(c)(4) nonprofit organization. *Id.*

34.     Both the New Venture Fund (and, by extension, its registered trademark "The Hub Project") and the Sixteen Thirty Fund are part of the Arabella Advisors network of managed nonprofits. *Id.*

35.     According to The Hub Project's original 2015 business plan, it was intended to be "solely funded by the Wyss Foundation at the outset" to work discreetly to "dramatically shift the public debate and policy positions of core decision makers." *Id.* ¶ 16. The plan further explained that The Hub Project was "not intended to be the public face of campaigns." *Id.*

36.     Charitable nonprofits exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code, such as the Wyss Foundation and the New Venture Fund (and, by extension, the Hub Project) are prohibited from "participat[ing] in, or interven[ing] in . . . any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 501(c)(3). Nevertheless, Administrative Respondents have funded or organized political activity

in express opposition to identified federal candidates without ever registering as political committees with the FEC.

37.     The New Venture Fund's Hub Project (which was started by the Wyss Foundation) has been extremely active in federal politics in recent years, spending "nearly $30 million" in 2017 and 2018 "pressuring members of Congress in their districts." Ex. 1, ¶¶ 12, 14-15. In addition to funding advertising campaigns that criticized Republican elected officials by name, The Hub Project also started a podcast criticizing conservative policies. *Id.* ¶ 15.

38.     Arkadi Gerney, Executive Director of the Hub Project, has confirmed that the Hub Project "controls the money flowing from the Sixteen Thirty Fund into the state-level groups" that ran advertising targeting Republican elected officials. *Id.* ¶ 18. In addition, Mr. Gerney also acknowledged that the Hub Project "controls a super PAC of its own, Change Now," which funded political advertising in 2018 targeting Republican elected officials. *Id.* ¶ 21.

39.     The activities described above and in APT's Administrative Complaint highlight several issues pertaining to the unreported political activity of the Administrative Respondents. Mr. Wyss is a foreign national and is prohibited from directly or indirectly making contributions or expenditures in federal elections. Nevertheless, Mr. Wyss's two nonprofit organizations, the Wyss Foundation and the Berger Action Fund, contributed tens of millions of dollars to the Sixteen Thirty Fund and the New Venture Fund between 2016 and 2020 to enable them to, among other activities, operate The Hub Project, a group that has engaged in substantial political activity targeting Republican candidates. *Id.* ¶ 31. In order to conceal these foreign national contributions, Mr. Wyss routed his contributions through a network of "dark money" nonprofits that do not disclose their donors.

40.     If the Administrative Respondent nonprofits have accepted contributions from Mr. Wyss or made expenditures for the purpose of influencing federal elections, then they have also violated federal law. Neither the Wyss Foundation, the Berger Action Fund, nor the New Venture Fund have filed a statement of organization as a political committee with the FEC. *Id.* ¶ 28.[1] Despite its failure to register with the FEC or report its political contributions and expenditures, the New Venture Fund has accepted at least $56.5 million from the Wyss Foundation (and, by extension, from Mr. Wyss, who has funded the Foundation). *Id.* ¶ 29. Mr. Wyss's other nonprofit, the Berger Action Fund, has made separate contributions of $135 million to the Sixteen Thirty Fund, which has also been made available for spending by the Hub Project. *Id.*

41.     Based upon the public reporting described above, Mr. Wyss—a foreign national— has served as the primary funder for two nonprofit organizations, the Wyss Foundation and the Berger Action Fund, which have subsequently contributed tens of millions of dollars in funding to the New Venture Fund and Sixteen Thirty Fund.  New Venture Fund and Sixteen Thirty Fund have put those contributions to use operating the Hub Project, which has run advertising directly targeting federal candidates across the country and even operates its own Super PAC. Therefore, it appears that Mr. Wyss has made unlawful political contributions and that the Administrative Respondent nonprofits have failed to register and report with the FEC as political committees as required by federal law. Concluding that there existed sufficient evidence based upon the foregoing to justify a FEC investigation into the relationships between Administrative Respondents, APT filed an Administrative Complaint.

---

[1] The Sixteen Thirty Fund has also filed no statement of organization, although several registered federal political committees identify themselves as "A Project of Sixteen Thirty Fund." *See* Fed. Election Comm'n, *Candidate and Committee Profiles*, https://www.fec.gov/data/search/?search=sixteen+thirty+fund.

## ADMINISTRATIVE PROCEEDINGS

42.     On May 14, 2021, Americans for Public Trust, through its Executive Director, Caitlin Sutherland, filed an administrative complaint with the FEC against Hansjörg Wyss, the Wyss Foundation, the Berger Action Fund, the New Venture Fund (including its trademark "The Hub Project"), and the Sixteen Thirty Fund, alleging violations of FECA pertaining to source prohibitions, conduit prohibitions, and political committee registration and reporting requirements set forth at 52 U.S.C. §§ 30121, 30122, 30103, and 30104 and corresponding FEC regulations. *See* Ex. 1.

43.     By letter dated May 18, 2021, the FEC acknowledged receipt of the administrative complaint filed by APT. The matter was designated by the FEC as MUR 7904. *See* Ex. 2.

44.     Upon information and belief, the FEC has failed to act on APT's Administrative Complaint against the Administrative Respondents, which has been pending now for more than 120 days. This unreasonable delay has harmed Plaintiff because it has deprived it, as well as the public, of full disclosure concerning Mr. Wyss's political contributions, the nature of the ongoing relationship between the Administrative Respondents, and the unreported political activity of the Administrative Respondent nonprofits. This is information to which APT is legally entitled under FECA, and information that is central to APT's mission of informing the public about campaign spending and the true sources and scope of candidates' financial support.

## CAUSE OF ACTION

### FECA, 52 U.S.C. § 30109(a)(8)(A)

45.     Plaintiff repeats and realleges paragraphs 1 – 44 as if fully stated herein.

46.     As detailed above, Plaintiff's Administrative Complaint established reason to believe that (1) Hansjörg Wyss violated 52 U.S.C. § 30121 by making contributions as a foreign

national for the purpose of influencing federal elections; (2) Hansjörg Wyss, the Wyss Foundation, and the Berger Action Fund violated 52 U.S.C. § 30122 by concealing Mr. Wyss's unlawful contributions through the use of conduit entities; (3) the New Venture Fund and Sixteen Thirty Fund violated 52 U.S.C. § 30103(a) by failing to register with the FEC as political committees after accepting more than $1,000 in contributions and making more than $1,000 in expenditures to influence federal elections; and (4) the New Venture Fund and Sixteen Thirty Fund violated 52 U.S.C. § 30104 by failing to report contributions and expenditures made for the purpose of influencing federal elections.  Ex. 1, ¶¶ 12-21.

47.    The FEC's failure to act on APT's Administrative Complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A), which provides that "[a]ny party aggrieved … by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia."

48.    More than 120 days have passed since the filing of the Administrative Complaint.

49.    APT seeks injunctive and declaratory relief to compel the FEC to take action on APT's Administrative Complaint alleging violations of FECA and corresponding FEC regulations governing contribution source prohibitions, conduit prohibitions, and political committee registration and reporting provisions.

50.    Due to the illegal inaction by the FEC, APT is being deprived of full disclosure of the activities undertaken by the Administrative Respondents and other information regarding the nature of the ongoing relationships among the Administrative Respondents. APT is entitled to this information under FECA and will use it to further its organizational mission to inform the public about the sources and nature of federal candidates' financial support.

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1)     Declare that the FEC's failure to act on APT's Administrative Complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2)     Order the FEC to conform with such declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3)     Award APT its costs and reasonable attorneys' fees incurred in this action; and

(4)     Grant such other relief the Court may deem just and proper.


Date:  April 25, 2022                    Respectfully submitted,


                                        */s/Jason Torchinsky*
                                        Jason Torchinsky (D.C. Bar No. 976033)
                                        jtorchinsky@holtzmanvogel.com
                                        Jonathan P. Lienhard (D.C. Bar No. 474253)
                                        jlienhard@holtzmanvogel.com
                                        HOLTZMAN VOGEL BARAN TORCHINSKY
                                        JOSEFIAK PLLC
                                        15405 John Marshall Highway
                                        Haymarket, VA 20169
                                        Tel: (540) 341-8808
                                        Fax: (540) 341-8809

                                        *Counsel for Plaintiff Americans for Public Trust*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Plaintiff Americans for Public Trust certifies, pursuant to Federal Rule of Civil Procedure 7.1, that:

1.  Americans for Public Trust is a Virginia nonstock corporation that has no parent corporation.

2.  No publicly held corporation owns 10 percent or more of Americans for Public Trust's stock.

<u>*/s/Jason Torchinsky*</u>
Jason Torchinsky

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing complaint will be served as soon as the summons is available

on the following persons by certified mail, return receipt requested, and that a courtesy copy will

be emailed to Kevin Deeley, FEC's Associate General Counsel for Litigation, at kdeeley@fec.gov:

Office of the General Counsel
Federal Election Commission
1050 First Street NE
Washington, DC 20463

And

Attorney General of the United States Merrick Garland
c/o Assistant Attorney General for Administration
Justice Management Division
950 Pennsylvania Ave. NW
Room 1111
Washington, D.C. 20530

And

Matthew M. Graves
United States Attorney for the District of Columbia
Civil Process Clerk
555 4th St. NW
Washington, D.C. 20001

<u>/s/Jason Torchinsky</u>
Jason Torchinsky

**EXHIBIT 1**

BEFORE THE FEDERAL ELECTION COMMISSION OF THE UNITED STATES OF
AMERICA

In the Matter of:
Hansjörg Wyss
Wyss Foundation
Berger Action Fund                                          MUR No. _____
New Venture Fund
(including its trademark "Hub Project")
Sixteen Thirty Fund

## COMPLAINT

1. Complainant brings this complaint before the Federal Election Commission ("FEC" or "Commission") seeking an immediate investigation and enforcement action against Hansjörg Wyss, Wyss Foundation, New Venture Fund (including its trademark "Hub Project"), Sixteen Thirty Fund, and Berger Action Fund for violations of the Federal Election Campaign Act ("FECA" or "Act").

2. This complaint is filed pursuant to 52 U.S.C. § 30109(a)(1) and is based on information providing reason to believe that:

3. Mr. Wyss indirectly funded federal electoral advocacy through his nonprofit organizations, the Wyss Foundation and the Berger Action Fund. The intended recipient of these funds was ultimately a variety of organizations whose primary purpose is to engage in electoral advocacy, including Sixteen Thirty Fund, New Venture Fund, the Hub Project, Change Now, and affiliated groups.

4. Mr. Wyss, the Wyss Foundation, the Berger Action Fund, New Venture Fund, Sixteen Thirty Fund, and the Hub Project failed to ensure that contributions were not made in violation of 52 U.S.C. § 30121 and 11 C.F.R. § 110.20; 52 U.S.C. § 30122 and 11 C.F.R. § 110.4.

5. Mr. Wyss apparently made illegal direct federal campaign contributions during and before 2003 before recent information casting doubt on his citizenship came to light in violation of 52 U.S.C. § 30121 and 11 C.F.R. § 110.20. Since that time, he has made indirect contributions and expenditures by means of an intricate network of organizations in a scheme to obscure his role as the source of these funds.

6. Mr. Wyss, the Wyss Foundation, the Berger Action Fund, New Venture Fund, Sixteen Thirty Fund, and the Hub Project failed to file as a political committee in violation of 52 U.S.C. § 30103(a) and 11 C.F.R. § 102.1(d);

7. Mr. Wyss, the Wyss Foundation, the Berger Action Fund, New Venture Fund, Sixteen Thirty Fund, and the Hub Project failed to properly report contributions and expenditures as required pursuant to 52 U.S.C. § 30104 and 11 C.F.R. § 104.3;

## STATEMENT OF THE LAW

8. The law prohibits foreign nationals from making contributions to political committees whether directly or indirectly. 52 U.S.C. § 30121 and 11 C.F.R. 110.20 further prohibit

foreign nationals from providing any substantial assistance in making any expenditure or independent expenditure or participating in any decision making. Expenditures and contributions made in the name of another are prohibited by 52 U.S.C. § 30122 and 11 C.F.R § 110.4.

9.  52 U.S.C. § 30103(a) and 11 C.F.R. § 102.1(d) require political committees to file a Statement of Organization no later than ten days after becoming a political committee.

10. 11 C.F.R. § 100.5(a) defines a political committee as any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 or which makes expenditures aggregating in excess of $1,000 during a calendar year.

11. Pursuant to 52 U.S.C. § 30104 and 11 C.F.R. § 104.3, a political committee is required to file a report containing all receipts and expenditures, including the itemization of each.

## STATEMENT OF FACTS

12. Hansjörg Wyss is a Swiss billionaire who donates to a variety of causes and organizations through an established foundation, the Wyss Foundation, a 501(c)(3) organization, and the Berger Action Fund, a 501(c)(4) organization, which shares facilities and staff with the Wyss Foundation.[1] "At the center of the effort is an opaquely named Democratic organization, the Hub Project, which is on track to spend nearly $30 million since 2017, pressuring members of Congress in their districts. The great bulk of its funding has come from so-called dark money — funds from donors who are not legally required to reveal their names."[2]

13. Mr. Wyss is a Swiss-born resident in the United States and when asked about his residency and citizenship status has stated that he "carried only a Swiss passport and did not have a U.S. green card."[3] His attorney confirmed that "HJW is lawfully in the U.S. pursuant to an 'E-2VISA' and 'is not a permanent resident of the US under a 'green card.'"[4]

14. Mr. Wyss, through his foundation, started the Hub Project in 2015, "for groups backing Democrats and their causes…[i]t created more than a dozen groups with anodyne-sounding names that planned to spend $30 million attacking Republican congressional candidates before the 2018 election."[5] As explained in paragraph 18, the Hub Project is a trademark of New Venture Fund.

15. The Hub Project is intended to "shape media coverage to help Democratic causes" through organizing advertising campaigns criticizing Republican congressional candidates and organizing marches that demanded the release of President Trump's tax returns in 2017. Additionally, the Hub Project hosts a podcast, "Made to Fail" which criticizes conservative policies.[6]

16. According to the Hub Project's business plan, prepared for the Wyss Foundation in 2015, it "recommended that the group 'be solely funded by the Wyss Foundation at the outset' and that it would work behind the scenes to 'dramatically shift the public debate and policy

[1] Kenneth P. Vogel, *Swiss Billionaire Quietly Becomes Influential Force Among Democrats*, The New York Times (May 3, 2021).
[2] Alexander Burns, *With $30 Million, Obscure Democratic Group Floods the Zone in House Races*, New York Times (Oct. 31, 2018).
[3] Kenneth P. Vogel and Katie Robertson, *Top Bidder for Tribune Newspapers Is an Influential Liberal Donor*, The New York Times (Apr. 13, 2021).
[4] Richard Pollock, "Foreign Clinton Donor Made Donations To US Campaigns," The Daily Caller, (Feb. 28, 2016).
[5] Vogel and Robertson, *supra* note 3; Vogel, *supra* note 1.
[6] Vogel and Robertson, *supra* note 3.

positions of core decision makers.'" The plan added that The Hub Project "is not intended to be the public face of campaigns."[7]

17. Currently, the Hub Project employs 60 staffers, including political organizers, researchers, and communications specialists.[8] It is run by former Obama official, Leslie Dach, and Arkadi Gerney, a former political strategist for Center for American Progress.[9]

18. The Hub Project is not a stand-alone entity but a registered trademark of the New Venture Fund, a 501(c)(3) organization.[10] Since 2007, the Wyss Foundation has given approximately $56.5 million to New Venture Fund.[11] The Sixteen Thirty Fund is a 501(c)(4) organization and both are part of the Arabella Advisors managed nonprofits.[12] Additionally, "Mr. Gerney confirmed that the Hub Project controls the money flowing from the Sixteen Thirty Fund into the state-level groups, but the larger nonprofit does not have to disclose its funding sources."[13]

19. The Berger Action Fund gave over $135 million to the Sixteen Thirty Fund between 2016 and 2020. The Sixteen Thirty Fund is considered to be "among the leading dark money spenders on the left" including a vast array of organizations engaged in electoral advocacy as their primary purpose.[14] Contributions from the Sixteen Thirty Fund were used to fund political activities of the state affiliates under the Hub Project.[15]

20. Mr. Arkadi described the Hub Project's operation as "unfolding in stages, first targeting five congressional districts in the summer of 2017, then expanding to a map of 19 seats over the next 11 months. In some districts, the Hub Project's state affiliates were running paid advertising months before other outside groups got involved — and before members of Congress mobilized to defend themselves."[16] One of the groups, Not One Penny, ran an independent expenditure in opposition to congressional candidate Rick Saccone. Floridians for a Fair Shake reported an independent expenditure for $7,541.09 in opposition to Vern Buchanan.[17]

21. "Mr. Gerney also confirmed that the Hub Project controls a super PAC of its own, Change Now, which has been funding advertising this fall against a smaller list of Republican-held districts that includes some of the same targets. The group has filed a report with the Federal Election Commission showing it received $1.75 million in funding from the League of Conservation Voters, the influential environmental group, and several people involved with the effort said future reports were expected to show contributions from national labor unions."[18] In 2018, the group Change Now "emerged as a large spender seemingly out of nowhere" and spent $7.9 million for House Democrats.[19] During that election cycle, the super PAC spent a total of $752,382 for Democrats and $7,160,047 against Republicans.[20]

---

[7] Vogel and Robertson, *supra* note 3.
[8] *Id.*
[9] The Hub Project Website.
[10] United States Patent and Trademark Office, Trademarks, The Hub Project.
[11] Vogel and Robertson, *supra* note 3.
[12] Arabella Advisors, Fiscal Sponsorship.
[13] Burns, *supra* note 2.
[14] Vogel, *supra* note 1.
[15] Burns, *supra* note 2.
[16] *Id.*
[17] Federal Election Commission, Itemized Independent Expenditures, Sixteen Thirty Fund/Not One Penny, Schedule 5-E Report; Federal Election Commission, Itemized Independent Expenditures, Sixteen Thirty Fund/Floridians for a Fair Shake, Schedule 5-E Report.
[18] Burns, *supra* note 2.
[19] Karl Evers-Hillstrom, *'Dark money' groups funneled millions to powerful super PACs during 2018 midterms*," Center for Responsive Politics (Jan. 3, 2019).
[20] Center for Responsive Politics, Open Secrets, Change Now PAC, Independent Expenditures.

**CAUSES OF ACTION**

**AGAINST RESPONDENTS MR. WYSS, WYSS FOUNDATION, BERGER ACTION FUND, NEW VENTURE FUND (INCLUDING ITS TRADEMARK "HUB PROJECT"), AND SIXTEEN THIRTY FUND**

**Prohibited Contributions in Violation of the Foreign National Ban 52 U.S.C. § 30121 and 11 C.F.R. § 110.20; Prohibited Conduit Contributions 52 U.S.C. § 30122 and 11 C.F.R. § 110.4**

22. Foreign nationals are prohibited from making contributions or expenditures *directly or indirectly*. Commissioner Weintraub made it abundantly clear in her draft interpretive rule that, "Indeed, the Commission has recognized the 'broad scope' of the foreign national contribution prohibition and found that even where the value of a good or service 'may be nominal or difficult to ascertain,' such contributions are nevertheless banned."[21]

23. Mr. Wyss publicly stated that he does not possess a U.S. green card, making him a lawful permanent resident, but still maintains his Swiss passport.[22] His attorney verified that Mr. Wyss is in the country on an E-2 VISA.[23] As a foreign national, Mr. Wyss is strictly prohibited from making direct contributions to political committees; yet, from 1990 to 2003, Mr. Wyss made direct contributions to federal candidates totaling nearly $70,000.[24] Since that time, Mr. Wyss' contributions have not decreased, but rather he continues to make sizeable contributions indirectly. By giving over $190 million to Arabella Advisor's New Venture Fund and Sixteen Thirty Fund to operate the Hub Project, its super PAC, Change Now, and the affiliated trade groups, Mr. Wyss has obscured his connection to these contributions.[25] Mr. Wyss has also given to various other Democratic supporting groups and causes, including $1 million from the Berger Action Fund to former Attorney General Eric Holder's effort to flip statehouses to benefit congressional Democrats in state redistricting efforts.[26]

24. However, the most glaring crack in the armor of this elaborate scheme to utilize a foreign national's funds to indirectly make contributions and expenditures is the admission by Hub Project Executive Director, Arkadi Gerney "that the Hub Project controls a super PAC of its own, Change Now" to run advertisements against Republicans."[27]

25. Further, foreign nationals are prohibited from providing any substantial assistance in making any expenditure or independent expenditure or participating in any decision-making regarding election related activities.[28] However, Mr. Wyss and his foundations "created a sophisticated political operation to advance progressive policy initiatives and the Democrats who support them" in setting up the Hub Project as a conduit to influence the 2018 congressional races.[29] The elaborate structure of Mr. Wyss' contributions demonstrates a scheme to conceal the true source of these funds and the evade the prohibitions on foreign nationals.

---

[21] Ellen L Weintraub (@EllenLWeintraub), Twitter (Sept. 26, 2019).
[22] Vogel and Robertson, *supra* note 3.
[22] *Id.*
[23] Richard Pollock, *supra* note 4.
[24] Vogel, *supra* note 1
[25] Vogel, *supra* note 1; Vogel and Robertson, *supra* note 3.
[26] Melissa Klein, *Swiss Billionaire Uses His Fortune To Help Sway US Elections*, New York Post (May 10, 2021).
[27] Burns, *supra* note 2.
[28] 11 C.F.R. § 110.20.
[29] Vogel and Robertson, *supra* note 3.

26. Federal law is clear that contributions made in the name of another are strictly prohibited.[30] The Hub Project has served as a vehicle for the political spending of Mr. Wyss. This is demonstrated by the fact that Mr. Wyss has not publicly disclosed his role in founding the Hub Project. Neither his influence nor his financial support can be found anywhere on the group's website. Rather, information regarding his involvement with the Hub Project was the result of "interviews with five people with knowledge of The Hub Project, an internal memo from another liberal group that was obtained by The New York Times."[31]

27. Mr. Wyss did not establish the Hub Project through one of his two foundations; rather he structured the project to be overseen by another entity, the New Venture Fund, which received $56.5 million from the Wyss Foundation with additional funds of $135 million made available through the Berger Action Fund to the Sixteen Thirty Fund.[32] This financial arrangement enabled Mr. Wyss to avoid any connection with the sizeable election activities carried out by the Hub Project and Change Now.[33] Merely because the scheme developed by Mr. Wyss has made his contributions difficult to ascertain does not mean that they should be free from being treated as though they were made directly.

### Failing to Register with the FEC as Required by 52 U.S.C. § 30103(a) and 11 C.F.R. § 102.1(d)

28. Neither the Wyss Foundation, the Berger Action Fund, nor New Venture Fund (and its trademark "Hub Project") have filed a statement of organization with the FEC. Any organization which receives contributions in excess of $1,000 or makes expenditures exceeding $1,000 in a calendar year is considered a political committee for the major purpose of influencing elections.[34]

29. In 2015, Mr. Wyss set up the Hub Project to operate under the New Venture Fund for the purpose of helping Democratic causes.[35] Since 2007, the Wyss Foundation has contributed at least $56.5 million to the nonprofit housing the Hub Project.[36] Additionally, Mr. Wyss made contributions of $135 million from his (c)(4) organization, Berger Action Fund, to the Sixteen Thirty Fund, made available for spending by the Hub Project.[37]

30. To achieve the Hub Project's purpose of helping Democratic causes, the group oversaw a $30 million spending campaign in the 2018 congressional cycle to support Democrats and oppose Republicans in congressional races across the country through its affiliated trade groups and through its super PAC, Change Now, thereby triggering classification as a political committee.[38] The law makes clear that a political committee must register with the FEC within ten days of meeting the requirements of this classification.[39] Operating since 2015 without the requisite FEC filing, the Hub Project has been immune to any oversight and accountability despite significant spending in federal elections.

### Failing to Properly File Reports and Disclosing Contributions and Expenditures in Violation of 52 U.S.C. § 30104 and 11 C.F.R. § 104.3

---

[30] 52 U.S.C. § 30122; 11 C.F.R. § 110.4.
[31] Vogel and Robertson, *supra* note 3.
[32] Vogel, *supra* note 1; Vogel and Robertson, *supra* note 3.
[33] Vogel, *supra* note 1; Vogel and Robertson, *supra* note 3; Burns, *supra* note 2.
[34] 11 C.F.R. § 100.5(a); Buckley v. Valeo, 424 U.S. 1, 80 (1976).
[35] Vogel and Robertson, *supra* note 3.
[36] Vogel and Robertson, *supra* note 3.
[37] Vogel, *supra* note 1; Vogel and Robertson, *supra* note 3.
[38] 11 C.F.R. § 100.5(a); Vogel, *supra* note 1.
[39] 52 U.S.C. § 30103(a); 11 C.F.R. § 102.1(d).

31. As a political committee, the Hub Project would be subject to reporting requirements under FECA.[40] The Hub Project is a beneficiary of over $190 million dollars from its financial backer, Mr. Wyss, contributed through the Wyss Foundation and the Berger Action Fund to Arabella Advisors' network of nonprofits.[41] Despite these significant contributions and potentially other sizeable contributions, the Hub Project has failed to properly file the source of the contributions.[42]

32. With these contributions, the group oversaw political spending, including at least two known independent expenditures against Republican congressional candidates and operated Change Now, a super PAC that spent $7.9 million supporting Democrats and opposing Republicans.[43] According to the executive director, Arkadi Gerney, the expenditures were coordinated to target five congressional districts in 2017 followed by expanding efforts to target 19 congressional districts.[44] The Hub Project exerts significant and coordinated influence into elections around the country but fails to provide any transparency in doing so.[45] Yet, other registered entities with the FEC, influencing the very same districts, are required to adhere to the reporting requirements under FECA.[46] The absence of properly filed reports removes necessary safeguards and fails to give an accurate picture of the extent of their influence.

## **PRAYER FOR RELIEF**

33. Wherefore, the Commission should find reason to believe that Mr. Wyss, the Wyss Foundation, the Berger Action Fund, New Venture Fund, Sixteen Thirty Fund, and the Hub Project have violated fundamental compliance and transparency rules with prohibited contributions by a foreign national pursuant to 52 U.S.C. § 30121 and 11 C.F.R. § 110.20, prohibited conduit contributions under 52 U.S.C. § 30122 and 11 C.F.R. § 110.4, failing to register with the FEC pursuant to 52 U.S.C. § 30103(a) and 11 C.F.R. § 102.1(d), and failing to report contributions and expenditures required by 52 U.S.C. § 30104 and 11 C.F.R. § 104.3. The Commission should conduct an immediate investigation under 52 U.S.C. § 30109(a)(2) and determine and impose appropriate sanctions for any and all violations. Further, the Commission should enjoin respondent from any future violations, and impose any necessary and appropriate remedies to ensure respondent future compliance with FECA.

May 14, 2021

Respectfully Submitted,

Caitlin Sutherland, Executive Director
Americans for Public Trust
107 South West Street, Suite 442
Alexandria, VA 22314

---

[40] 52 U.S.C. § 30104 and 11 C.F.R. § 104.3.
[41] Vogel and Robertson, *supra* note 3; Vogel, *supra* note 1.
[42] 52 U.S.C. § 30104 and 11 C.F.R. § 104.3.
[43] Federal Election Commission, Itemized Independent Expenditures, Sixteen Thirty Fund/Not One Penny, Schedule 5-E Report; Federal Election Commission, Itemized Independent Expenditures, Sixteen Thirty Fund/Floridians for a Fair Shake, Schedule 5-E Report; Karl Evers-Hillstrom, *supra* note 12.
[44] Burns, *supra* note 2.
[45] Vogel, *supra* note 1.
[46] 52 U.S.C. § 30104 and 11 C.F.R. § 104.3.

6

VERIFICATION

34. The complainants listed below hereby verify that the statements made in the attached Complaint are, upon their information and belief, true.

For Complainant "Americans for Public Trust"

Caitlin Sutherland

City of Arlington
Commonwealth of Virginia

The foregoing instrument was subscribed and sworn to before me this 14th day of May 2021 by Caitlin Sutherland.

Notary Public

Notary registration number: 7809548

My commission expires: 5/31/2022

7

**EXHIBIT 2**



**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C. 20463

May 18, 2021

**VIA EMAIL**
csutherland@americansforpublictrust.org
Caitlin Sutherland
Americans for Public Trust
107 South West Street, Suite 442
Alexandria, VA 22314

RE:  MUR 7904

Dear Ms. Sutherland:

This letter acknowledges receipt of your complaint on May 14, 2021, alleging possible violations of the Federal Election Campaign Act of 1971, as amended.  The respondents will be notified of this complaint within five business days.

You will be notified as soon as the Federal Election Commission (FEC) takes final action on your complaint.  Should you receive any additional information in this matter, please forward it to the Office of the General Counsel.  Such information must be notarized and sworn to in the same manner as the original complaint.  We have numbered this matter MUR 7904.  Please refer to this number in all future communications.  For your information, we have attached a brief description of the Commission's procedures for handling complaints.

Please note that you still must file the paper copy of the electronic complaint with the Commission, within 15 days of this letter, in order for the matter to be further processed as a proper complaint.  Any additional correspondence sent to the Commission must be addressed to one of the following below.  As indicated in the FEC's Notice found at https://www.fec.gov/resources/cms-content/documents/status_of_fec_operations_8-10-2020.pdf, the office's mailroom is open on a limited basis and, therefore, processing paper correspondence may be delayed.  Accordingly, we strongly encourage you to file via email, except amendments to your complaint, which should be filed by paper even if email correspondence is used.

|  **Mail** | OR | **Email** |
| --- | --- | --- |
| Federal Election Commission |  | cela@fec.gov |
| Office of Complaints Examination |  |  |
|  & Legal Administration |  |  |
| Attn:  Kathryn Ross, Paralegal |  |  |
| 1050 First Street, NE |  |  |
| Washington, DC 20463 |  |  |

Sincerely,

Jeff Jordan

Jeff S. Jordan
Assistant General Counsel
Complaints Examination &
Legal Administration

Enclosure:
Procedures

## DESCRIPTION OF PRELIMINARY PROCEDURES
## FOR PROCESSING COMPLAINTS FILED WITH THE
## FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, D.C.  20463
EMAIL cela@fec.gov         FAX (202) 219-3923

Complaints filed with the Federal Election Commission shall be referred to the Enforcement Division of the Office of the General Counsel, where they are assigned a MUR (Matter Under Review) number and forwarded to Complaints Examination & Legal Administration ("CELA") for processing.  Within five days of receipt of the complaint, the Commission shall notify all respondents referenced in the complaint, in writing, that the complaint has been filed, and shall include with such notification a copy of the complaint.  Simultaneously, the complainant shall be notified that the complaint has been received.  The respondents shall then have 15 days to demonstrate, in writing, that no action should be taken against them in response to the complaint.  If additional time is needed in which to respond to the complaint, the respondents may request an extension of time.  The request must be in writing and demonstrate good cause as to why an extension should be granted.  Please be advised that not all requests are granted.

After the response period has elapsed, cases are prioritized and maintained in CELA. Cases warranting the use of Commission resources are assigned as staff becomes available.  Cases not warranting the use of Commission resources are dismissed.

If a case is assigned to a staff person, the Office of the General Counsel shall report to the Commission, making recommendations based upon a preliminary legal and factual analysis of the complaint and any submission made by the respondent.  The report may recommend that the Commission: (a) find reason to believe that the complaint sets forth a possible violation of the Federal Election Campaign Act of 1971, as amended, (hereinafter the "Act"); or (b) find no reason to believe that the complaint sets forth a possible violation of the Act and, accordingly, close the file.

If, by an affirmative vote of four Commissioners, the Commission determines that there is reason to believe that a respondent has committed or is about to commit a violation of the Act, the Office of the General Counsel shall open an investigation into the matter.  During the investigation, the Commission has the power to subpoena documents, to subpoena individuals to appear for deposition, and to order written answers to interrogatories.  A respondent may be contacted more than once by the Commission during this phase.

If during this period of investigation, a respondent indicates a desire to enter into conciliation, the Office of the General Counsel may recommend that the Commission enter into conciliation prior to a finding of probable cause to believe that a violation has been committed. Conciliation is an attempt to correct or prevent a violation of the Act by informal methods of conference and persuasion.  Most often, the result of conciliation is an agreement signed by the Commission and the respondent.  The Conciliation Agreement must be adopted by four votes of

the Commission in order to become final.  After signature by the Commission and the respondent, the Conciliation Agreement is made public within 30 days of closing of the entire file.

If the investigation warrants, and no conciliation agreement has been entered into prior to a probable cause to believe finding, the General Counsel must notify the respondent of his/her intent to recommend that the Commission proceed to a vote on probable cause to believe that a violation of the Act has been committed or is about to be committed.  The General Counsel shall send the respondent a brief setting forth his/her position on the legal and factual issues of the case.  A response brief stating respondent's position on the issues may be submitted within 15 days of receipt of the General Counsel's Brief.  Both briefs are then filed with the Commission Secretary and considered by the Commission.  Thereafter, if the Commission determines, by an affirmative vote of four Commissioners, that there is probable cause to believe that a violation of the Act has been committed or is about to be committed, the Commission must conciliate with the respondent for a period of at least 30 days, but not more than 90 days.  If the Commission is unable to correct or prevent any violation through conciliation, the Office of the General Counsel may recommend that the Commission file a civil suit to enforce the Act against the respondent.  Therefore, the Commission may, upon the affirmative vote of four Commissioners, institute civil action for relief in the United States District Court.

*See* 52 U.S.C. § 30109 and 11 C.F.R. Part 111**.**

March 2018